UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:25-cv-09343-CV (SSCx) | Date October 4, 2025 |
| Title *Marin v. Noem, et al.* | |

Present: The Honorable Cynthia Valenzuela, United States District Judge

| Jessica Cortes | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [2]**

Petitioner Bayron Rovidio Marin ("Petitioner") applies ex parte for a temporary restraining order and order to show cause. Doc. # 2 ("Application"). On October 2, 2025, Respondents Department of Homeland Security ("DHS"); Immigration and Customs Enforcement ("ICE"); Kristi Noem, in her official capacity as Secretary of DHS; Todd Lyons, in his official capacity as the Acting Director of ICE; and Ernesto Santacruz Jr., in his official capacity as the Acting Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations Division ("Respondents") filed an Opposition to this Application. Doc. # 7 ("Opp."). On October 3, 2025, Petitioner filed a Reply. Doc. # 8. The Court has read and considered the moving, opposing, and reply papers, and finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L. Civ. R. 7-15. For the following reasons, Petitioner's Application is **GRANTED**.

### I.     FACTUAL BACKGROUND

Petitioner resides in California and, until August 27, 2025, had no prior contact with immigration authorities. *See* Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241; Verified Petition, Doc. # 1 ("Pet.") ¶ 47; Sept. 28, 2025 Declaration of Cynthia Santiago, [Doc. # 2 at 34–37] ("Santiago Decl.") ¶ 4.

On August 27, 2025, Petitioner was arrested at the Carson Car Wash in Carson, California by uniformed Customs and Border Protection ("CBP") officers and unidentified plainclothes federal agents. *See* Pet. ¶¶ 16, 48; Santiago Decl. ¶ 3. During the arrest, Petitioner sustained severe leg injuries. *See* Pet. ¶ 48; Santiago Decl. ¶ 5. He was handcuffed and transported by CBP to the emergency room at Harbor-UCLA Medical Center in Carson, California. *Id.*

At the hospital, Petitioner was admitted under a "blackout" procedure for patients in law-enforcement custody and was registered under the pseudonym "Har Maine UNK Thirteen." Santiago Decl. ¶ 7. Federal agents remained at Petitioner's bedside during admission, transfer to non-public treatment areas, and throughout his stay, keeping him handcuffed to his hospital bed. *Id.* ¶ 6.

On or about August 27, 2025, CBP transferred custody of Petitioner to ICE. *See* Pet. ¶ 48. He remains detained at Harbor-UCLA Medical Center under the supervision of ICE, which has contracted with Spectrum Detention Services ("Spectrum") to provide guards. *See* Santiago Decl. ¶ 8; Pet. ¶ 48.

Since that date, two to four uniformed guards—either Spectrum employees or ICE agents—have been continuously stationed in Petitioner's hospital room, monitoring him at all times, including while he sleeps, eats, uses the restroom, or receives medical care. *See* Santiago Decl. ¶¶ 9–10.

ICE has restricted Petitioner's access to counsel. On August 29, 2025, ICE initially denied counsel any access; later, it permitted counsel to meet with Petitioner but not without the deportation officers present. *See* Santiago Decl. ¶¶ 13–14. ICE has further prohibited Petitioner from placing or receiving phone calls, including to his attorneys, and has barred visits from family or friends. *See* Santiago Decl. ¶ 16; Pet. ¶ 48. Petitioner has also been subjected to questioning by government officials about his place of birth, his family's immigration status, and other personal matters, sometimes while he was in pain or under the influence of medication. *See* Santiago Decl. ¶ 15.

On September 17, 2025, a "Sergeant Vela" informed Petitioner's counsel that ICE had no information on Petitioner and had not assigned him an "A number." *See* Santiago Decl. ¶ 17. Sergeant Vela explained that although Petitioner was in ICE custody, he would not be formally processed until he is transported to ICE's processing center in downtown Los Angeles. *Id.*

Petitioner's counsel has requested documentation of a judicial warrant for his arrest, any charging documents, or other authority supporting his detention. *See* Santiago Decl. ¶¶ 18–20. ICE has provided no response. *Id.*

To date, ICE has not placed Petitioner in removal proceedings, charged him with violating immigration law, set bond, issued a Notice to Appear, or otherwise processed him. *See* Pet. ¶¶ 16, 49. In Respondent's Opposition brief, the government states "ICE intends to take further action consistent with the laws prescribed under the Immigration and Nationality Act ("INA") once Petitioner is released from medical care and it can conduct the examination as [prescribed] in 8 C.F.R § 287.3." Opp. at 4. Neither Petitioner nor Respondents have provided the Court with information about Petitioner's citizenship, whether he has violated any law or regulation, or any information that would suggest that Petitioner is a flight risk.

## II.    LEGAL STANDARD

The standard for issuing a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a temporary restraining order and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a temporary restraining order must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another," *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a temporary restraining order may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other *Winter* factors are also met. *Id.* at 1132.

## III.    DISCUSSION

### A.    Jurisdiction

It is undisputed here that the Court has jurisdiction pursuant to 28 U.S.C. § 2241. Federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States .

. . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). "The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention." *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012); *see also*, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that Section 2241 "remain[s] available as a forum for statutory and constitutional challenges to post-removal-period detention.").

### B. Winter Factors

#### 1. *Likelihood of Success on the Merits*

"Likelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation modified), particularly in cases raising constitutional claims. *See Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023).

Petitioner contends that no statute authorizes his continued detention. Application at 1–2. He argues that being held without cause violates his due process rights under the Fifth Amendment, contravenes 8 U.S.C. § 1225(b)(2) and DHS regulations, and violates the Administrative Procedure Act. *See Id*. at 14–15; *see generally*, Pet. Respondents counter that Petitioner was "lawfully arrested pursuant to [Respondents'] warrantless arrest authority [prescribed] under 8 U.S.C. § 1357." Opp. at 5. They maintain that because Petitioner is hospitalized, they "have been unable to examine Petitioner in accordance with 8 C.F.R. § 287.3(c)" to decide "whether they intend to refer him to an Immigration Judge for removal proceedings, order him removed pursuant to the expedited removal process, or take other appropriate action." *Id*.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, including those alleged to be noncitizens subject to removal. *See Zadvydas*, 533 U.S. at 693.

Respondents have not provided any factual basis for Petitioner's arrest. Section 1357(a)(2) authorizes a warrantless arrest only if the officer reasonably believes that the individual (1) is a noncitizen, (2) is in the United States in violation of the law, and (3) is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2); *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995). Respondents identify no facts supporting such a belief.

Nor do Respondents justify Petitioner's continued detention. Under 8 C.F.R. § 287.3(c)–(d), following a warrantless arrest an officer must promptly advise the individual of the reasons for arrest and of the right to representation. Within 48 hours, the government

must determine whether the person will remain in custody or be released on bond, and whether a Notice to Appear and warrant of arrest will issue. *Id*. § 287.3(d). Only in the event of an "emergency or other extraordinary circumstance" may that determination be delayed, and then only "within an additional reasonable period of time." *Id*.

Few courts have interpreted what constitutes an "additional reasonable period of time" under Section 287.3. In *Turkmen v. Ashcroft*, noncitizen detainees arrested in the wake of the September 11, 2001 attacks alleged that delayed service of Notices to Appear violated their due process rights. No. 02-CV-2307 (JG), 2006 WL 1662663, at *1, *45 (E.D.N.Y. June 14, 2006), *aff'd in part, vacated in part, and remanded*, 589 F.3d 542 (2d Cir. 2009). After their respective arrests, two plaintiffs were not served with Notices to Appear for sixteen days, one for seven days, and another for five days. *Id*. at *45. The district court rejected their claim, holding that the September 11 attacks qualified as an "extraordinary circumstance" and that delays of several days were reasonable in that context. *Id*. at *45. The court cautioned, however, that "[t]here is no doubt that at some point after arrest, an alien's due process rights would be violated if he were detained without being served a Notice to Appear." *Id*. at *46 (emphasis omitted).

The circumstances here are materially different. Petitioner has been detained for more than 37 days—substantially longer than any plaintiff in *Turkmen*. The asserted "emergency"—a broken leg—does not present systemic obstacles comparable to the September 11 attacks. Even assuming Petitioner's medical condition qualifies as an "extraordinary circumstance," however, Respondents do not explain how this emergency has prevented them from making a Section 287.3 determination. Their claim that they have been "unable to examine Petitioner" (Opp. at 5) is contradicted by unrebutted sworn testimony that deportation officers questioned him about his place of birth, family immigration status, and other sensitive matters during his hospitalization. Santiago Decl. ¶ 15. The record further shows that Petitioner has communicated with counsel and medical staff throughout his detention. *Id*. ¶¶ 10, 14.

On these facts, Respondents' prolonged failure to provide Petitioner with formal notice of the reasons for his detention cannot be justified as a "reasonable period of time" under Section 287.3(d). It is therefore likely that Petitioner's due process rights are being violated. Considering the absence of factual support for Petitioner's arrest, the lack of justification for his continued detention, and the length of time he has been held without process, the Court concludes that Petitioner is likely to succeed on the merits of his claim that his detention lacks statutory authority and violates the Constitution. Accordingly, the "likelihood of success" factor weighs in Petitioner's favor and supports granting the requested temporary restraining order.

### 2. *Irreparable Harm*

Petitioner argues that without a temporary restraining order, he will remain

unlawfully detained without authority for his detention. Application at 26–27. Respondents counter that loss of liberty is common to all noncitizens challenging custody or bond determinations, and that Petitioner has not shown irreparable injury because, once released, he "will be subject to an immigration enforcement action and will be in the same situation he is in currently[.]" Doc. # 7 at 9.

The Court finds that Petitioner has carried his burden of demonstrating irreparable harm. He is presently detained under restrictions that limit his access to counsel, medical providers, and family. He has been questioned by government officials while in pain and under the influence of medication. He cannot place phone calls and remains handcuffed to a hospital bed despite a broken leg that prevents him from walking. He has received no more than a vague explanation for his detention, and Respondents' proffered excuses for delaying a formal notice are unsupported by facts. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994). Indeed, Petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (citation omitted).

In its Opposition, Respondents provide no evidence that Petitioner is a noncitizen, that he entered the United States unlawfully, or that he violated any statute or regulation. Even if the Court were to give weight to Respondent's vague assertions that it might initiate an immigration enforcement action at some point, that statement does not diminish Petitioner's showing of irreparable harm. The Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment)." *Hernandez*, 872 F.3d at 995. Courts in this district likewise hold that detention under 8 U.S.C. § 1226(a) without a bond hearing constitutes irreparable harm. *See, e.g.*, *Arreola Armenta v. Noem,* 5:25-cv-2416-JFW (SPx) (C.D. Cal. Sept. 16, 2025), at 3; *Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFMx), 2025 WL 2591530, at *6 (C.D. Cal. Sept. 8, 2025); *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS (BFMx) (C.D. Cal. July 28, 2025) at 9; *Benitez v. Noem,* No. 5:25-cv-02190-RGK (ASx) at 6. Accordingly, this factor weighs in Petitioner's favor.

### 3. *Balance of Equities and Public Interest*

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues that the balance of equities and the public interest weigh in favor of granting the temporary restraining order because the government's policy as applied in this case violates federal law. Application at 27–28.

Respondents argue that the "public interest in enforcing the United States' immigration laws outweighs Petitioner's private interest here." Opp. at 10.

The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion that the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA). That the government has an interest in enforcing its immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'") (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). Thus, the balance of equities and the public interest tip sharply in favor of issuing the requested temporary restraining order.

### C.    Scope of Relief

The Supreme Court "has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (collecting cases). Injunctive relief "should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *U. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown." *Id.* (citation omitted).

Petitioner seeks a temporary restraining order directing Respondents to "release Petitioner and remove all restraints on his liberty—including the presence of guards or other security personnel in or near his hospital room at Harbor-UCLA Medical Center." Doc. # 2 at 44–45. The Court finds that the requested relief is appropriately limited and tailored to address the specific harm demonstrated.

To be clear, Respondents must <u>not</u> remove Petitioner from the hospital, cause his discharge before his medical team deems it medically appropriate, or require his in-person appearance before an immigration officer prior to his discharge from the hospital. Rather, the Court orders that guards be withdrawn from Petitioner's hospital room, that restrictions on his activities be lifted (including his ability to make telephone calls to family and friends and to confer confidentially with counsel outside the presence of ICE agents), and that any physical restraints, such as handcuffs, be removed.

## IV. CONCLUSION

For the foregoing reasons, the Application is **GRANTED**. The Court **ORDERS** as follows:

1. Respondents must release Petitioner and remove all restraints on his liberty – including removing the guards or other security personnel in or near Petitioner's hospital room at Harbor-UCLA Medical Center.

2. Respondents are cautioned not to take any action impairing Petitioner's ability to obtain complete relief in this action.

3. This temporary restraining order shall take immediate effect and expires at **5:00 p.m. PT on October 18, 2025**. The temporary restraining order may be extended for good cause or upon Respondents' consent.

4. Respondents are **ORDERED TO SHOW CAUSE** on **October 16, 2025, at 10:30 a.m.**, why a preliminary injunction should not issue. *See* C.D. Cal. L. Civ. R. 65-1. Respondents must file any written response to the Order to Show Cause no later than **October 8, 2025**. Petitioner shall file a reply no later than **October 14, 2025**.

**IT IS SO ORDERED.**